CARROLL BAILEY & another[1] *vs.* BOARD OF APPEALS OF HOLDEN & another.[2]

Worcester.    February 5, 1976. — April 6, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Public Hearing.   Housing.   Environmental Affairs.   Zoning,* Board of appeals: decision.

A housing authority was entitled to obtain a comprehensive permit under G. L. c. 40B, § 21, from a board of appeals for the construction of low cost housing without first conducting a public hearing on the site selected [96-97]; the board's grant of a permit was not invalid on the ground that the authority did not own the site when it filed its application [97].

A local housing authority is not required to comply with environmental provisions set forth in G. L. c. 30, § 61 or § 62, before it may apply for a comprehensive permit from a board of appeals under c. 40B, § 21. [97-98]

A finding by the board of appeals of a town that the granting of a comprehensive permit for the construction of low cost housing would be "reasonable and consistent with local needs," supported by findings that the town had not met its minimum housing obligations and that the need for such housing was established by the evidence, satisfied the board's obligation under G. L. c. 40B, to state findings and the reasons for its decision. [98-99]

---

[1] Betty J. Bailey.

[2] Holden Housing Authority.

BILL IN EQUITY filed in the Superior Court on January 30, 1974.

The suit was heard by *Zarrow, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William C. O'Neil, Jr.,* for the plaintiffs.

*Phillips S. Davis* for the Holden Housing Authority.

WILKINS, J. In January, 1974, the Holden housing authority (authority) obtained a comprehensive permit under G. L. c. 40B, § 21, from the Holden board of appeals (board) for the construction of low-cost housing for the elderly on a five-acre site, of which the Baileys own about three and one-half acres.[3] The Baileys appealed under G. L. c. 40B, § 21, to the Superior Court and now appeal from a final decree, entered in May, 1974, upholding the board's action and dismissing the Baileys' appeal. We transferred the appeal here on our own motion.

The Baileys argue that (1) the authority was required to hold a public hearing before selecting a site for housing for the elderly, (2) the authority could not seek a comprehensive permit because it did not (and still does not) own the premises, (3) the authority should have complied with regulations of the executive office of environmental affairs before seeking the permit, and (4) the board did not make adequate findings in its decision. There was no error.

1. The authority did not have to conduct a public hearing before selecting a site for the construction of housing for the elderly. The Baileys concede that no statute required such a hearing but argue that they had a constitutional right to a hearing before the authority made its selection of a site. They premise their argument on the

---

[3] The proposed use required a special permit from the board under the Holden zoning by-law. The authority wanted exemptions from the requirement of (a) a minimum frontage of eighty feet (the proposed lot has forty feet), (b) a minimum floor area of 768 square feet for each dwelling unit (against a proposed minimum of 470 square feet), and (c) a minimum number of off-street parking spaces.

contention that under *Fuentes* v. *Shevin,* 407 U.S. 67, 82 (1972), and *Armstrong* v. *Manzo,* 380 U.S. 545, 551 (1965), concerning judicial action in the absence of a hearing, due process required that they be granted a hearing before selection of their property as the site for housing for the elderly.

The determination of what property is to be taken and used for public housing is a legislative function, not requiring a prior hearing as a matter of constitutional right. *Reid* v. *Acting Comm'r of Dept. of Community Affairs,* 362 Mass. 136, 140 (1972). *Hayeck* v. *Metropolitan Dist. Comm'n,* 335 Mass. 372, 375 (1957). *Joslin Mfg. Co.* v. *Providence,* 262 U.S. 668, 678 (1923).[4]

2. The grant of the comprehensive permit is not invalid on the ground that the authority did not own the proposed site when it filed its application with the board. Ownership of a site is not a condition precedent to the right of a public agency to seek a comprehensive permit under G. L. c. 40B. *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339, 378 (1973). The seriousness of the authority's interest in the site was apparent. At the time the application was filed, a thorough site selection study had been conducted; comprehensive plans had been prepared; a contract for the development of the selected site had been made between the authority and the DCA; and funding of the project had been arranged.

3. The authority was not required to file an environmental assessment form and an environmental impact report before seeking a comprehensive permit from the board. General Laws c. 30, § 62, inserted by St. 1972, c. 781, § 2, requires the publishing of an environmental impact report where damage to the environment may be caused by any work, project, or activity undertaken by an "agency, department, board, commission, or authority of the com-

---

[4] We note that the decision was not an arbitrary one. Studies were made of sites which might be appropriate for housing for the elderly, and the State Department of Community Affairs (DCA) was consulted before the authority made its decision.

monwealth or any authority of any political subdivision thereof." The Baileys rightly do not argue that the board is an "authority" subject to the requirements of G. L. c. 30, § 62. In turn, however, the authority does not suggest that it is free from obligations under this statute. Prior to the hearing before the board, the authority submitted an environmental assessment form in which it indicated that the project would not cause significant environmental damage. We need not be concerned with the details of the steps followed by the authority because a local housing authority is not required to comply with G. L. c. 30, § 61 or § 62, before it may apply for a comprehensive permit under G. L. c. 40B, § 21. The Baileys do not claim that the authority has failed to comply with G. L. c. 30, §§ 61 and 62, in any other respect.[5]

4. The Baileys contend finally that the board failed to make necessary specific findings. The Baileys do not indicate what findings should have been made and were not. The only findings which are required are those which relate to the standards set forth in G. L. c. 40B, §§ 20-23. The board found that the granting of a comprehensive permit would be "reasonable and consistent with local needs," which is the applicable standard appearing in G. L. c. 40B, § 23. See *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs*, 363 Mass. 339, 364-365 (1973). In support of this conclusion, the board further found that the town had not met its minimum housing obligations for low or moderate income housing for the elderly and that the need for low income housing for the elderly was established by the evidence before it. While these findings are conclusory, they are more than mere repetitions of the required statutory findings. Although the board's opinion would have been more satisfactory if it had recited subsidiary facts on which those ultimate findings of

---

[5] The authority states in its brief that its assessment that the project would not cause significant environmental damage has been accepted by the Commonwealth and no environmental impact statement will be required. The record does not show this fact to be true, but the Baileys do not deny the assertion.

fact were based, the board fulfilled its obligation to state the reasons for its decision.[6]

*Decree affirmed.*

---

[6] General Laws c. 40B, § 21, does not expressly direct a board of appeals to state the reason or reasons for its decision, as did § 18 of G. L. c. 40A, as amended through St. 1971, c. 1018, as to matters under The Zoning Enabling Act then in effect. We believe, however, that a board of appeals has an obligation under G. L. c. 40B to state the reasons for its decision. See G. L. c. 40B, § 22, which requires a board of appeals to transmit a copy of its decision *and the reasons therefor* to the housing appeals committee in the event of an appeal to that committee from action of the board of appeals.

The Baileys argue in one sentence that the judge did not make necessary specific findings. His findings are in sufficient detail to support his conclusion that the board's decision did not exceed its jurisdiction and is valid and proper.